Pearson, J.
The title'of the slaves had become complicated by reason of the claim set up by Osborne and Graham under the deed of Goot, and the slaves constituted a very considerable proportion of the property which had been purchased b3r the plaintiffs. A difficulty was also presented b}7, the lease of the gold-mine. This, the plaintiffs were forced to remove by the payment of some $12,000. It is true, the conveyance of the property, which was made to them, was without warranty, but it purported to convey a present interest, and they had, at least, a plausible ground for insisting that it was the duty of the North Carolina company, (as it was termed in the argument,) the vendor of the premises, to remove the incumbrance. There wras likewise a difficulty as to the “ gold ore,” which had been raised and was lying on the land, and the plaintiffs paid some $1,300 to remove it. So, there was a difficulty and a law-suit both in respect to the iron ore-bank *138 and the “ lime-quarry.” Under these circumstances, the plaintiffs, to avoid litigation, propose to waive all other grounds of complaint, and paj' the residue of the purchase-money, provided the North Carolina company would talce, in part payment, the slaves at a proper valuation, so as to relieve the plaintiffs from the embarrassment caused by the claim of Osborne and Graham. This proposition is met by a “counter project,” to wit: The North Carolina company will not require the payment of the principal money until the litigation in respect to the slaves is determined, provided the interest, which will be due on the 1st of September next, be paid, and also an amount sufficient to enable the company to make an arrangement with W. E. Nose. This proposition was accepted, the interest was paid, and also $5000, which the bill alleges, was the amount of cash required in order to effect the arrangement with Nose. The North Carolina company after-wards propose to postpone the collection of the principal money until February, 1859, provided the yearly interest is promptly paid.
This is a special, as distinguished from a common injunction. So, the bill is to be read as an affidavit, and taking “ the whole together/’ the question is, ought the injunction to be dissolved, so as to permit the sale of the property at this time. We are clearly of opinion that, under the circumstances, it would be against conscience and fair dealing, to force the property into market until the title is cleared. We, therefore, concur with his Honor in the Court below. The motion to dissolve the injunction was properly refused. But the interlocutory order must be reversed ; because the plaintiffs ought to have been required to pay the interest yearly accruing on 1st of September, in each and every year, so long as the injunction is continued.
There will be an interlocutory decree continuing the injunction “ until further order,” the plaintiffs paying the interest accrued up to the 1st of September last, and such as may accrue on the 1st of September in each year hereafter.
The purpose of holding up the injunction until further or *139 der, instead of v,niil the hearing, is to allow the defendants to move in the cause as they may be advised should the interest accruing after this time not be promptly paid, or should the litigation in respect to the slaves be sooner determined.
We see in this case and several others at this term, that the original papers are sent instead of a transcript. This is irregular, and the clerk of this Court is directed not to allow the original papers to bo withdrawn from his office until a proper transcript is sent, to be filed nune pro time ¡ so that each court may preserve a proper memorial of the proceedings pending before it.
Pick Curiam, Decree according to the opinion.